UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No.: 5:08-cv-00014-FL

| | | |
|---|---|---|
| BROOKS LEWIS MUSSELMAN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | **BRIEF OF APPELLANT** |
| v. | ) | Rule 8009, Federal Rules of Bankruptcy |
| | ) | Procedure |
| eCAST SETTLEMENT CORPORATION, | ) | |
| | ) | |
| Appellee. | ) | |

Joseph A. Bledsoe, III
Attorney for Appellant
Law Offices of John T. Orcutt, P.C.
6616-203 Six Forks Road
Raleigh, NC 27615
(919) 847-9750
Fax (919) 847-3439
NC State Bar No.: 19817

# TABLE OF CONTENTS

Page

TABLE OF CASES                                                          ii

TABLE OF STATUTES                                                       iv

TABLE OF OTHER ITEMS CITED                                             v

ADDENDUM - STATUTES INVOLVED                                          vi

I.      STATEMENT OF THE BASIS OF APPELLATE JURISDICTION              1

II.     STATEMENT OF ISSUES PRESENTED ON APPEAL AND                   1
        APPLICABLE STANDARD OF REVIEW

III.    STATEMENT OF THE CASE                                          2

IV.     STATEMENT OF THE FACTS                                         4

V.      ARGUMENT

        A.      The term "applicable commitment period," as it is used in §      5
                1325(b)(4), when considered in the context of its *required use*
                under § 1325(b)(1)(B), indicates a monetary (or multiplier), and
                not a temporal, interpretation.

        B.      Even if the ACP generally connotes a temporal requirement, it is   24
                simply not applicable in cases where there is no disposable
                income.

VI.     CONCLUSION                                                     25

i

## TABLE OF CASES

Cooter & Gell v. Hartmax Corp., 496 U.S. 384 (1990)     2

Deans v. O'Donnell, 692 F.2d 968 (4th Cir. 1982)     7, 8

Dolan v. U.S. Postal Service, 546 U.S. 481 (2006)     5

Education Assistance Corp. v. Zellner, 827 F.2d 1222 (8th Cir. 1987)     8

In re Anderson, 153 B.R. 527 (Bankr. M.D.Tenn. 1993)     17

In re Anderson, 21 F.3d 355 (9th Cir. 1994)     13

In re Apex Express Corp., 190 F.3d 624 (4th Cir. 1999)     1

In re Alexander, 344 B.R. 742 (Bankr. E.D.N.C. 2006)     3, 6, 24

In re Barfknecht, 378 B.R. 154 (Bankr. W.D.Tex. 2007)     12, 13

In re Brady, 361 B.R. 765 (Bankr. D.N.J. 2007)     6, 24

In re Buck, 2007 WL 4418145, slip op. (Bankr. E.D.Va. 2007)     13

In re Cheatham, 91 B.R. 377 (E.D.N.C. 1988)     2

In re Davis, 348 B.R. 449 (Bankr. E.D.Mich. 2006)     9

In re Environmental Aspects, Inc., 235 B.R. 378 (E.D.N.C. 1999)     2

In re Estus, 695 F.2d 311 (8th Cir. 1982)     8

In re Frederickson, 368 B.R. 2007 (Bankr. E.D.Ark. 2007)     25

In re Fuger, 347 B.R. 94 (Bankr. D.Utah 2006)     6, 16, 24

In re Goeb, 675 F.2d 1386 (9th Cir. 1982)     8

In re Guentert, 206 B.R. 958 (Bankr. W.D.Mo. 1997)     18

In re Hylton, 374 B.R.579 (Bankr. W.D.Va. 2007)     6

In re Jackson, 173 B.R. 168 (Bankr. E.D.Mo. 1994)     18

In re Klus, 173 B.R. 51 (Bankr. D.Conn. 1994)          18

In re Lawson, 361 B.R. 215 (Bankr. D.Utah 2007)          24

In re Martin, 232 B.R. 29 (Bankr. D.Mass. 1999)          10

In re Midway Airlines Corp., 283 B.R. 846 (E.D.N.C. 2002)          1

In re Moss, 91 B.R. 563 (Bankr. C.D.Cal. 1998)          17

In re Murphy, 474 F.3d 143 (4th Cir. 2007)          10

In re Reinertson, 241 B.R. 451 (Bankr. 9th Cir.BAP 1999)          2

In re Rimgale, 669 F.2d 426 (7th Cir. 1982)          8

In re Schanuth, 342 B.R. 601 (Bankr. W.D.Mo. 2006)          9, 13, 14, 16

In re Sitarz, 150 B.R. 710 (Bankr. D.Minn. 1993)          8

In re Solomon, 67 F.3d 1128 (4th Cir. 1995)          11, 12

In re Swann, 368 B.R. 12 (Bankr. N.D.Cal. 2007)          24

In re Zirtzman, 2006 WL 3000103 (Bankr. N.D.Iowa 2006)          24, 25

Matter of Killough, 900 F.2d 61 (5th Cir. 1990)          12

Safety-Kleen, Inc. v. Wyche, 274 F.3d 846 (4th Cir. 2001)          1

iii

# TABLE OF STATUTES

**Federal Statutes:**

| | |
|---|---|
| 11 U.S.C. § 101(10A)(A)(i) | 2, 21 |
| 11 U.S.C. § 101(10A)(A)(ii) | 21 |
| 11 U.S.C. § 502(i) | 15 |
| 11 U.S.C. § 521(a)(1)(B)(ii) | 17 |
| 11 U.S.C. § 521(j) | 16, 17 |
| 11 U.S.C. § 707(b)(2)(A) | 2, 5, 22 |
| 11 U.S.C. § 707(b)(2)(A)(1) | 22, 23 |
| 11 U.S.C. § 707(b)(2)(A)(2) | 22, 23 |
| 11 U.S.C. § 707(b)(2)(A)(3) | 22, 23 |
| 11 U.S.C. § 707(b)(2)(A)(4) | 22, 23 |
| 11 U.S.C. § 707(b)(2)(A)(5) | 22, 23 |
| 11 U.S.C. § 707(b)(2)(A)(6) | 22, 23 |
| 11 U.S.C. § 707(b)(2)(A)(7) | 22, 24 |
| 11 U.S.C. § 707(b)(2)(B) | 2, 5, 22 |
| 11 U.S.C. § 1325(a) | 17 |
| 11 U.S.C. § 1325(a)(3) | 7, 8, 11 |
| 11 U.S.C. § 1325(a)(4) | 6 |
| 11 U.S.C. § 1325(b) | 3, 6, 8, 9, 11-14, 17-21, 23-25 |
| 11 U.S.C. § 1325(b)(1)(A)(2004) | 14 |
| 11 U.S.C. § 1325(b)(1)(A) | 14, 15 |
| 11 U.S.C. § 1325(b)(1)(B)(2004) | 9 |
| 11 U.S.C. § 1325(b)(1)(B) | 5, 13, 17-20, 25 |
| 11 U.S.C. § 1325(b)(2) | 1, 20, 21 |
| 11 U.S.C. § 1325(b)(3) | 1, 2, 22 |

11 U.S.C. § 1325(b)(3)(C)    4

11 U.S.C. § 1325(b)(4)    1, 5, 6, 9, 13, 18, 24

11 U.S.C. § 1325(b)(4)(A)(ii)    3

11 U.S.C. § 1325(b)(4)(B)    14, 15

11 U.S.C. § 1328(a)    15, 16, 19

11 U.S.C. § 1329    10, 16, 17, 19, 21, 23

11 U.S.C. § 1329(a)    19

11 U.S.C. § 1329(b)    18

11 U.S.C. § 1329(b)(1)    17, 18

11 U.S.C. § 1329(c)    18

28 U.S.C. § 157(b)(2)(L)    1

28 U.S.C. § 158(a)(1)    1

**Federal Rules:**

Rule 8013, Federal Rules of Bankruptcy Procedure    1

## TABLE OF OTHER ITEMS CITED

*Reasonable and necessary expenses under Section 1325(b) of the Bankruptcy Code,*    9
*postconfirmation considerations, and the effect of conversion and dismissal of*
*Chapter 13 case,* The University of Memphis Law Review (Summer, 2003)
(authored by David S. Kennedy and R. Spencer Clift, III)

v

# ADDENDUM - STATUTES INVOLVED

## 11 U.S.C. § 101. Definitions.

(10A) The term "current monthly income"—

    (A)    means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on—

        (i)    the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521 (a)(1)(B)(ii); or

        (ii)    the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521 (a)(1)(B)(ii)[.]

\*   \*   \*

## 11 U.S.C. § 502. Allowance of Claims or Interests.

    (i)    A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507 (a)(8) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

\*   \*   \*

## 11 U.S.C. § 521. Debtor's Duties.

    (a)    The debtor shall—

        (1)    file—

            (B)    unless the court orders otherwise—

                (ii)    a schedule of current income and current expenditures;

    (j)

        (1)    Notwithstanding any other provision of this title, if the debtor fails to file a tax return that becomes due after the commencement of the case or to properly obtain an extension of the due date for filing such return, the taxing authority may request that the court enter an order converting or dismissing the case.

vi

(2)     If the debtor does not file the required return or obtain the extension referred to in paragraph (1) within 90 days after a request is filed by the taxing authority under that paragraph, the court shall convert or dismiss the case, whichever is in the best interests of creditors and the estate.

\*     \*     \*

## 11 U.S.C. § Dismissal of a case or conversion to a case under chapter 11 or 13

(b)

(1)     After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548 (d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548 (d)(4)).

(2)     (A)     (i)     In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I)     25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or

(II)     $10,000.

(ii)

(I)     The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area

vii

in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts. In addition, the debtor's monthly expenses shall include the debtor's reasonably necessary expenses incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 of the Family Violence Prevention and Services Act, or other applicable Federal law. The expenses included in the debtor's monthly expenses described in the preceding sentence shall be kept confidential by the court. In addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing of up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service.

(II)     In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

(III)    In addition, for a debtor eligible for chapter 13, the debtor's monthly expenses may include the actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10 percent of the projected plan payments, as determined under schedules issued by

viii

the Executive Office for United States Trustees.

(IV)    In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, not to exceed $1,500 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I).

(V)    In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

(iii)    The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—

(I)    the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and

(II)    any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

divided by 60.

(iv)    The debtor's expenses for payment of all priority claims (including priority child support and alimony claims) shall be calculated as the total amount of debts entitled to priority, divided by 60.

ix

(B)

    (i)      In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

    (ii)     In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide—

        (I)     documentation for such expense or adjustment to income; and

        (II)    a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

    (iii)    The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

    (iv)    The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of—

        (I)     25 percent of the debtor's nonpriority unsecured claims, or $6,000, whichever is greater; or

        (II)    $10,000.

\*   \*   \*

x

**11 U.S.C. § 1325.  Confirmation of Plan**

(a)     Except as provided in subsection (b), the court shall confirm a plan if—

    (1)     The plan complies with the provisions of this chapter and with the other applicable provisions of this title;

    (2)     any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

    (3)     the plan has been proposed in good faith and not by any means forbidden by law;

    (4)     the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

    (5)     with respect to each allowed secured claim provided for by the plan—

        (A)     the holder of such claim has accepted the plan;

        (B)     (i)     the plan provides that—

            (I)     the holder of such claim retain the lien securing such claim until the earlier of—

                (aa)     the payment of the underlying debt determined under nonbankruptcy law; or

                (bb)     discharge under section 1328; and

            (II)     if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

        (ii)     the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

        (iii)     if—

            (I)     property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

            (II)     the holder of the claim is secured by personal

xi

property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(C)    the debtor surrenders the property securing such claim to such holder;

(6)    the debtor will be able to make all payments under the plan and to comply with the plan;

(7)    the action of the debtor in filing the petition was in good faith;

(8)    the debtor has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statute, to pay such domestic support obligation; and

(9)    the debtor has filed all applicable Federal, State, and local tax returns as required by section 1308.

For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

(b)

(1)    If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A)    the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B)    the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

(2)    For purposes of this subsection, the term "disposable income" means

xii

current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

(A)

    (i)     for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

    (ii)    for charitable contributions (that meet the definition of "charitable contribution" under section 548 (d)(3) to a qualified religious or charitable entity or organization (as defined in section 548 (d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and

(B)    if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

(3)    Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707 (b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—

(A)    in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

(B)    in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(C)    in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

(4)    For purposes of this subsection, the "applicable commitment period"—

(A)    subject to subparagraph (B), shall be—

    (i)    3 years; or

(ii)    not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than—

(I)    in the case of a debtor in a household of 1 person,

the median family income of the applicable State for 1 earner;

(II)    in the case of a debtor in a household of 2, 3, or 4

individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(III)    in the case of a debtor in a household exceeding 4

individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4; and

(B)    may be less than 3 or 5 years, whichever is applicable under

subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

\*   \*   \*

## 11 U.S.C. § 1328.  Discharge

(a)    Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—

(1)    provided for under section 1322 (b)(5);

(2)    of the kind specified in section 507 (a)(8)(C) or in paragraph (1)(B),

(1)(C), (2), (3), (4), (5), (8), or (9) of section 523 (a);

(3)    for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime; or

(4)    for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual.

*    *    *

## 11 U.S.C. § 1329.  Modification of Plan After Confirmation

(a)    At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1)    increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2)    extend or reduce the time for such payments;

(3)    alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or

(4)    reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor (and for any dependent of the debtor if such dependent does not otherwise have health insurance coverage) if the debtor documents the cost of such insurance and demonstrates that—

(A)    such expenses are reasonable and necessary;

(B)    (i)    if the debtor previously paid for health insurance, the amount is not materially larger than the cost the debtor previously paid or the cost necessary to maintain the lapsed policy; or

(ii)    if the debtor did not have health insurance, the amount is not materially larger than the reasonable cost that would be incurred by a debtor who purchases health insurance, who has similar income, expenses, age, and health status, and who lives in the same geographical location with the same number of dependents who do not otherwise have health insurance coverage; and

xv

   (C)  the amount is not otherwise allowed for purposes of determining disposable income under section 1325 (b) of this title;

and upon request of any party in interest, files proof that a health insurance policy was purchased.

(b)

  (1)  Sections 1322 (a), 1322 (b), and 1323 (c) of this title and the requirements of section 1325 (a) of this title apply to any modification under subsection (a) of this section.

  (2)  The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c)  A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325 (b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

\*  \*  \*

## 28 U.S.C. § 157. Procedures

(b)  (1)  Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

  (2)  Core proceedings include, but are not limited to—

   (L)  confirmations of plans[.]

\*  \*  \*

## 11 U.S.C. § 158. Appeals

(a)  The district courts of the United States shall have jurisdiction to hear appeals

  (1)  from final judgments, orders, and decrees[.]

xvi

# I. STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

Appellate jurisdiction is based on 28 U.S.C. § 158(a)(1) from an appeal of a final judgment entered by the honorable Randy D. Doub, United States Bankruptcy Judge.  The issues decided by the bankruptcy court were core proceedings in accordance with 28 U.S.C. § 157(b)(2)(L).

# II. STATEMENT OF ISSUE PRESENTED ON APPEAL AND APPLICABLE STANDARD OF REVUE

## A.    Issue Presented by Appellant on Appeal

Did the bankruptcy court err when it found that, upon an objection to confirmation of a chapter 13 plan by the holder of an allowed unsecured claim, the "applicable commitment period" as defined in 11 U.S.C. § 1325(b)(4) conclusively determines the required plan length, irrespective of whether or not the chapter 13 debtor has any "projected disposable income" as calculated under 11 U.S.C. §§ 1325(b)(2) and (b)(3)?

## B.    Applicable Standard of Review

On appeal, the district court may affirm, remand with instructions for further proceedings, or reverse the decision of the bankruptcy court.  A bankruptcy court's findings of fact are reviewed under a "clearly erroneous" standard.  Safety-Kleen, Inc. v. Wyche, 274 F.3d 846, 859 (4th Cir. 2001).  Conclusions of law are reviewed de novo.  In re Apex Express Corp., 190 F.3d 624, 630 (4th Cir. 1999); In re Midway Airlines Corp., 283 B.R. 846, 849 (E.D.N.C. 2002).  See also Rule 8013, Federal Rules of Bankruptcy Procedure (setting forth standard of review for findings of fact).  "A finding of fact is clearly erroneous when it is (1) not supported by substantial evidence; (2) contrary to the clear preponderance of the evidence; or (3) based on a erroneous view of the law."  In re Environmental Aspects, Inc., 235 B.R. 378, 383-384 (E.D.N.C. 1999), quoting In re Cheatham, 91 B.R. 377, 378 (E.D.N.C. 1988).  A bankruptcy court

1

necessarily abuses its discretion if its decision is based on an erroneous view of the law or clearly erroneous factual findings. In re Reinertson, 241 B.R. 451, 454 (Bankr. 9th Cir.BAP 1999), *citing* Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 405 (1990).

## III.    STATEMENT OF THE CASE

Brooks Lewis Musselman (hereinafter "Musselman") filed a Voluntary Petition under Chapter 13 of Title 11 of the United States Code (hereinafter "the Bankruptcy Code") on February 27, 2007. Accordingly his case is subject to the amendments made to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 (hereinafter "BAPCPA"). Along with the Petition, Musselman filed all appropriate bankruptcy schedules and forms, including a new for m required by BAPCPA, Official Form 22C, the CHAPTER 13 STATEMENT OF CURRENT MONTHLY INCOME AND CALCULATION OF COMMITMENT PERIOD AND DISPOSABLE INCOME (hereinafter "Form 22C"). According to Musselman's Form 22C, his "current monthly income," (hereinafter "CMI"), as determined and defined by 11 U.S.C. § 101(10A)(A)(i), when annualized, is above the state median annual income for a family of his size. *(See* Form 22C, Bankruptcy Court Docket No. 1 at p. 2, line 15 and 16). As a consequence, Musselman was required to complete parts III, IV, V and VI of Form 22C (Form 22C at p. 2, line 23). As a further consequence, in calculating his "disposable income," Musselman was constrained to calculate his "reasonably necessary expenses" in accordance with 11 U.S.C. § 1325(b)(3), and by incorporation, in accordance with 11 U.S.C. § 707(b)(2)(A) and (B). (Form 22C at p. 1).

Since Musselman's is an "above median" debtor, his "applicable commitment period," (hereinafter "ACP"), determined in accordance with 11 U.S.C.§ 1325(b)(4)(A)(ii), is "not less

2

than 5 years." However, Form 22 C also shows that Musselman has no disposable income. (Form 22C at p. 6, line 58). Accordingly, and in accordance with In re Alexander, 344 B.R. 742 (Bankr. E.D.N.C. 2006), Musselman's plan provided that he would pay in the aggregate amount of $24,245, with a proposed payment schedule of $459.00 per month for 55 months, but the plan does not propose to pay any dividend to his general unsecured creditors. (*See Id.* at 751). On May 22, 2007, the chapter 13 Trustee filed a Motion to Confirm Musselman's proposed plan (Bankruptcy Court Docket No. 15, hereinafter "Motion to Confirm").

On May 2, 2007, Appellee/Cross Appellant eCAST Settlement Corporation (hereinafter "eCAST") filed proof of an unsecured claim in Musselman's chapter 13 case, to which Proof of Claim no objection has been made. On June 18, 2007, eCAST filed an objection to the Trustee's Motion to Confirm under 11 U.S.C. § 1325(b). (Bankruptcy Court Docket No. 16, hereinafter "Objection"). Specifically, among other things, eCAST alleged that Musselman improperly calculated his "projected disposable income," and that Musselman is required to propose a plan with a duration of not fewer than 60 months.

After the parties agreed to a continuance of the hearing initially set on the Trustee's Motion to Confirm and eCAST'S objection thereto, a hearing in this matter was held in Fayetteville, North Carolina on September 6, 2007. Present at such hearing were Musselman, Joseph A. Bledsoe, III (Musselman's attorney), B. Perry Morrison (eCAST's attorney) and Trawick H. Stubbs, Jr. (the chapter 13 Trustee). The honorable Randy D. Doub, United States Bankruptcy Judge, presided.

On November 30, 2007, the bankruptcy court entered an ORDER REGARDING OBJECTION TO CONFIRMATION OF PLAN (Bankruptcy Court Docket No. 41, hereinafter

"Order"). Among other things, such Order confirmed that Musselman had, in fact, properly computed his "projected disposable income." (Order, p. 7). Furthermore, the court confirmed that Musselman had correctly computed the amount of his plan payment. (Order, p. 17). Nevertheless, the court held that, as a matter of law, Musselman's proposed 55 month plan could not be confirmed over eCAST's objection, and found that because Musselman's plan did not propose to pay his unsecured creditors in full, he was required to file a plan setting forth a 5 year payment schedule. (Order, p. 18).

On December 7, 2007, undersigned, on behalf of Musselman, timely filed a Notice of Appeal regarding the bankruptcy court's Order. On December 17, 2007, undersigned filed an Amended Notice of Appeal, Appellant's Designation of Contents for Inclusion in Record on Appeal, and Appellant's Statement of Issues on Appeal. On December 27, 2007, eCAST filed a Cross-Appeal, along with Appellee's Designation of Contents for Inclusion in Record on Appeal, and Appellee's Statement of Issues on Appeal. Finally, on January 8, 2008, the Notice of Appeal and record were transmitted from the Bankruptcy Court to the United States District Court for the Eastern District of North Carolina, and on January 10, 2008, such appeal was docketed.

## IV.    STATEMENT OF THE FACTS

Musselman is married and has three children living in the home. (Schedule I, Bankruptcy Docket No. 1). He resides in Cumberland County, North Carolina (Voluntary Petition, Bankruptcy Docket No. 1 at p. 1), and his CMI, as reflected on Form 22C is $5,968.95 (Form 22C, p. 2, line 20). As of the date of the filing of Musselman's Petition, the median household income in Cumberland County, North Carolina, for a family of 5, was $67,702.00 (Form 22C, p. 2, line 22). He is, therefore, an "above-median" debtor.

4

On his bankruptcy Schedule I, Musselman lists current income of $5,430.28 (Schedule I),

while on his bankruptcy Schedule J, he lists current expenses of $4,971.28. (Schedule J,

Bankruptcy Docket No. 1). Because he is an above-median debtor, for the purposes of

calculating his disposable income, Musselman was required to calculate his "reasonably

necessary" expenses under 11 U.S.C. § 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(3)(C). Such

expenses included various standard deductions based on the Internal Revenue Service National

and Local Standards, and his actual expenses. (Form 22C). His Form 22C expenses totaled

$6,224.75 (Form 22C, p. 6, line 57), so that his CMI as calculated per the statute totaled *negative*

$255.80. (Form 22C, p. 6, line 58).

## V.     ARGUMENTS

### A.     The term "applicable commitment period," as it is used in § 1325(b)(4), when considered in the context of its *required use* under § 1325(b)(1)(B), indicates a monetary (or multiplier), and not a temporal, interpretation.

> The definition of words in isolation, however, is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and considering any precedents or authorities that inform the analysis. Dolan v. U.S. Postal Service, 546 U.S. 481, 486 (2006).

This admonition by the Supreme Court is particularly relevant to the discussion of the

proper interpretation and application of § 1325(b)(4). As nearly all of the courts which have

addressed § 1325(b)(4) and the ACP have observed, the word "period" usually has a temporal

connotation. *See, for example*, In re Fuger, 347 B.R. 94, 97 (Bankr. D.Utah 2006)("[t]he word

'period' by itself does seem to refer to a period of time"); In re Brady, 361 B.R. 765, 776 (Bankr.

5

D.N.J. 2007)("it is certainly true that the term 'period' signifies a portion of time and may therefore be labeled 'temporal'"); In re Alexander, 344 B.R. 742, 750 (Bankr. E.D.N.C. 2007)("[t]he word 'period,' read plainly, denotes a period of time"); and In re Hylton, 374 B.R.579, 588 (Bankr. W.D.Va. 2007)("[t]he use of the term 'period' implies time period rather than amount"). However, this focus on the customary definition and use of the word "period" in § 1325(b)(4) is clearly misplaced, as the term ACP should be interpreted in relation to its purpose under the whole of subsection (b) of § 1325. Indeed, subsection (b)(4) begins "[f]or the *purposes* of this subsection, the 'applicable commitment period' . . . shall be . . .." 11 U.S.C. § 1325(b)(4) (emphasis added). Historically, the underlying purpose of subsection (b) has been to determine the appropriate financial commitment a debtor must propose with respect to his plan, not to determine the plan's length, and when viewed in that vein, a "monetary" interpretation of ACP is clearly appropriate.

Subsection (b) was first added to § 1325 of the Bankruptcy Code as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. 98-353 (hereinafter "the 1984 Amendments"). Prior to its addition, the only specific requirement for confirmation of a chapter 13 plan, *vis-a-vie* a debtor's unsecured creditors, was that the plan had to propose to pay the unsecured creditors at least as much as they would receive if the debtor's estate were liquidated in a chapter 7 case. 11 U.S.C. § 1325(a)(4). Prior to the 1984 Amendments, then, other than the "liquidation test" of (a)(4), § 1325 contained no explicit requirement that a chapter 13 debtor pay any certain amount to his unsecured creditors.

6

There was, however, a "good faith" requirement with respect to the filing of chapter 13 plans. Such requirement was, and remains, contained in 11 U.S.C. § 1325(a)(3), which simply provides that a plan must be "proposed in good faith and not by any means forbidden by law." To address problems caused by the lack of statutory guidance as to the proper treatment of unsecured claims under a chapter 13 plan, bankruptcy courts properly used a "good faith" analysis. In the Fourth Circuit, the seminal case on the issue of "good faith" in chapter 13 was Deans v. O'Donnell, 692 F.2d 968 (4th Cir. 1982).

In Deans, the debtor had proposed a plan which, among other things, provided that no dividend would be paid to the holders of allowed unsecured claims. *Id.* at 969. The bankruptcy court denied confirmation of her plan, and the district court affirmed such denial, finding that a plan that provides no "substantial and meaningful" repayments to the unsecured creditors could not meet the good faith requirement of §1325(a)(3). *Id.* at 969. The Fourth Circuit, rejecting a *per se* rule regarding good faith and the proposed dividend to unsecured creditors, vacated the order denying confirmation and remanded the case back to the bankruptcy court for reconsideration. *Id.* at 972. The court then went on to describe some of the factors which it deemed should be considered in determining the good faith of the chapter 13 debtor. These factors included "not only the percentage of the proposed repayment, but also the debtor's financial situation, the period of time the payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the

particular debtor." *Id.* at 972. Finally, the court concluded that "the totality of circumstances must be examined on a case by case basis in order fairly to apply the statute as now written." *Id.* at 972.

Prior to the 1984 Amendments, a number of other courts also opted to address the question of the appropriate financial commitment to unsecured creditors under a § 1325(a)(3), "good faith" analysis. *See, generally,* In re Rimgale, 669 F.2d 426 (7th Cir. 1982); and In re Goeb, 675 F.2d 1386 (9th Cir. 1982). *See also* In reEstus, 695 F.2d 311, 316 (8th Cir. 1982)("in determining whether a debtor's plan meets the section 1325(a)(3) confirmation requirement of good faith, we believe the proper inquiry should follow the analysis adopted by the Fourth Circuit").

The 1984 Amendments, and specifically the addition of subsection (b) to § 1325, significantly altered that approach. No longer did the bankruptcy courts have to struggle with the interplay of "percentage payouts" and "good faith" in chapter 13 because § 1325(b) provided a clear test. It was the "disposable income" or "ability to pay" test, and for many courts it became *the* relevant consideration in determining the appropriate measure of the financial contribution a chapter 13 debtor would be required to propose. *See, for example*, Education Assistance Corp. v. Zellner, 827 F.2d 1222, 1227 (8th Cir. 1987)("[the] 'ability to pay' criteria [of § 1325(b)] subsumes most of the Estus factors and allows the court to confirm a plan in which the debtor uses all of his disposable income for three years to make payments to his creditors"); and In re Sitarz, 150 B.R. 710, 721 (Bankr. D.Minn. 1993)(""1325(b) subsumed most of the financially-based objections to confirmation under § 1325(a)(3)").

8

It is important to note that the addition of § 1325(b) was in response to aggressive

lobbying by the consumer credit industry, who wanted stronger debt repayment provisions, and

in particular wanted debtors to be required to increase payments to unsecured creditors in chapter

13. *Reasonable and necessary expenses under Section 1325(b) of the Bankruptcy Code,*

*postconfirmation considerations, and the effect of conversion and dismissal of Chapter 13 case*,

The University of Memphis Law Review (Summer, 2003) (authored by David S. Kennedy and R.

Spencer Clift, III).   Thus, from its inception, § 1325(b) was designed and intended to dictate the

amount *to be paid*, and not the length of time over which such payments would be made.

Notwithstanding this intended purpose, a number of those courts which have found that

the ACP under § 1325(b)(4) imposes a temporal requirement have reasoned that, to find the ACP

to be a multiplier "would constitute a significant departure from pre-BAPCPA law." In reDavis,

348 B.R. 449, 457 (Bankr. E.D.Mich.  2006).  *See also* In re Schanuth, 342 B.R. 601, 608

(Bankr. W.D.Mo. 2006)("a monetary interpretation of ACP represents a gross departure from

pre-BAPCPA practice that is not justified by the language or structure of the statute").  In reality,

however, this is simply not true.

Of course, the phrase "applicable commitment period" did not appear in the Bankruptcy

Code prior to BAPCPA.  Nevertheless, the previous incarnation § 1325(b)(1)(B) provided that, in

order to overcome an unsecured creditor's objection to confirmation of the plan, the debtor had

to propose a plan in  which he would devote his "projected disposable income to be received in

the three-year period" after filing to "make payments under the plan."  11 U.S.C. §

1325(b)(1)(B)(2004).  Thus, the "three-year" period was the functional equivalent of an

"applicable commitment period" under the Bankruptcy Code prior to BAPCPA.  While most

9

courts did not specifically address the "three-year" requirement in terms of it being temporal or monetary, they in effect treated it as a multiplier.

The issue usually arose in the context of a debtor who wanted to cash out exempt assets in order to "pay off" his chapter 13 case early. Such was the situation in the Fourth Circuit case of In re Murphy, 474 F.3d 143 (4th Cir. 2007). Murphy actually involved an appeal by the individual chapter 13 debtor James Murphy, and the joint chapter 13 debtors Stanley and Doris Goralski. *Id.* at 145. For the sake of this argument, Appellant will discuss the Goralski's case only. The Goralski's plan had been confirmed, and approximately 18 months into the plan, they wanted to take out a loan against the equity in their home in order to pay off their chapter 13 plan. *Id.* at 146. The Goralski's case was filed on April 29, 2003, before the passage of BAPCPA. *Id.* at 146. In order to accomplish the early payout, the Goralskis filed a motion seeking permission to refinance, offering therein to pay all of the remaining payments under their confirmed plan. *Id.* At 146. Because they had not been in the plan for 36 months, and further because they had not proposed to use the loan proceeds to pay their unsecured creditors in full, the Trustee filed a motion to modify the Goralski's plan under 11 U.S.C. § 1329, which motion the bankruptcy court denied. *Id.* at 146-47. The district court affirmed the decision of the bankruptcy court, and the Trustee appealed to the Fourth Circuit. *Id.* At 147. Ultimately, the Fourth Circuit upheld the lower courts' decisions. *Id.* at 151. Furthermore, the court allowed the early payout of the Goralskis' case. *Id.* at 151.

Courts in other jurisdictions have similarly allowed early pay-outs in pre-BAPCPA chapter 13 cases. *See, for example,* In re Martin, 232 B.R. 29, 37 (Bankr. D.Mass. 1999)("A lump sum payment in the aggregate amount of the Debtor's disposable income during the three

10

years of the Plan is simply an anticipatory satisfaction of the obligations of the Plan and is permissible.") If, in fact, a temporal approach was the norm under pre-BAPCPA practice, early pay-outs such as in <u>Murphy</u> and <u>Martin</u> would never have been permissible.

Further supporting Appellant's position in regard to this issue is the Fourth Circuit case of <u>In re Solomon,</u> 67 F.3d 1128 (4th Cir. 1995). In <u>Solomon</u>, the debtor's proposed plan provided, among other things, that he would make monthly payments in the amount of $750, to be paid over 60 months. Among his assets, Mr. Solomon had Individual Retirement Accounts worth over $1,400,000, from which he could, but was not required, to withdraw finds. He was, at the time of the filing, only 62 years of age, and federal law did not require that he withdraw funds until he reached age 70 ½. Thus, he would not have been required to withdraw funds from the accounts at any time while his chapter 13 case remained pending. Furthermore, he indicated that he did not intend to withdraw funds from the accounts while he was in chapter 13, and the accounts were exempt under the applicable exemption laws for the state of Maryland. The chapter 13 Trustee and unsecured creditors objected, contending that Solomon's plan did not meet either the "disposable income" requirement of § 1325(b), or the "good faith" requirement of § 1325(a)(3). Neither the bankruptcy court nor the district court addressed the issue of "good faith," instead basing their decisions to deny confirmation on a finding that Solomon's plan did meet the "disposable income" requirement. *Id.* at 1131.

On appeal, the Fourth Circuit remanded the case to the bankruptcy court for further findings and proceedings on the issue of "good faith." *Id*. at 1134. However, on the issue of "disposable income," the court reversed. First finding that the IRA's did not constitute "disposable income" under the Bankruptcy Code, the Fourth Circuit then went on to describe the

11

process by which "projected disposable income" is to be calculated, saying "[p]rojected

disposable income typically is calculated by *multiplying* a debtor's income at the time of

confirmation by 36 months, the normal duration of a Chapter 13 plan, and then determining what

portion of that income which is 'disposable' according to the statutory definition." *Id.* at 1132.

(emphasis added).

In addition to the Fourth Circuit, the "multiplier" approach would seem to be the pre-

BAPCPA interpretation of the "disposable income" requirement in at least two other circuits, as

well. In the Fifth Circuit, encompassing Louisiana, Mississippi and Texas, the Fifth Circuit

Court of Appeals described the process for determining "projected disposable income" by saying,

"[i]nitially, [the court] must project the income of the debtor 'over the next three years.' For

practical purposes, this task is usually accomplished by multiplying a debtor's monthly income

by 36. Next, the bankruptcy court must assess the amount of the debtor's income that is

'disposable.'" Matter of Killough, 900 F.2d 61, 64 (5th Cir. 1990) (internal citations omitted). In

the Ninth Circuit, which includes Alaska, Arizona, California, Hawaii, Idaho, Montana, Nevada,

Oregon and Washington, as well as the U. S. Territories of Guam and the Northern Mariana

Islands, the Court of Appeals simply quoted the relevant portion of the Killough decision, as set

forth above, and stated, "[t]he Fifth Circuit's interpretation fully accords with the plain language

of the statute, and we adopt it." In re Anderson, 21 F.3d 355, 357 (9th Cir. 1994).

Since BAPCPA became effective, at least two courts addressing the issue of "disposable

income" under post-BAPCPA § 1325(b) have acknowledged that under the pre-BAPCPA

Bankruptcy Code, determining "projected disposable income" was a matter of multiplication. In

the case of In re Barfknecht, 378 B.R. 154, 160 (Bankr. W.D.Tex. 2007), the court observed

that, "pre-BAPCPA, courts *usually* calculated a debtor's projected disposable income by subtracting the projected reasonable expenses listed on Schedule J from the debtor's estimated projected monthly income reflected on Schedule I, then multiplying that figure by the length of the plan." The Barfknecht court was not considering whether or not the ACP imposes a temporal versus a monetary requirement on the debtor, but it is nevertheless relevant to the consideration of whether or not interpreting ACP as a multiplier would be a "gross departure from pre-BAPCPA practice . . .." Schanuth, 342 B.R. at 608.

Likewise, the bankruptcy court for the Eastern District of Virginia recently noted, "[t]he modifier 'projected' has always been tied to the statutory definition of disposable income. It simply means the disposable income, calculated by the method mandated by the statute, must be multiplied out (or, in other words, projected out) over the number of months covered by the plan." In re Buck, 2007 WL 4418145, slip op. 3 (Bankr. E.D.Va. 2007). Significantly, the Buck court also indicated that the prior practice will still apply to projected disposable income calculations, post-BAPCPA, stating that, "[a]lthough the method for calculating disposable income changed under BAPCPA, the phrase 'projected disposable income' employed in § 1325(b)(1)(B) did not. The case law interpreting the phrase 'projected disposable income' and its relationship to other portions of the Code, therefore, remains effective." *Id*. at 2.

Thus, it is simply erroneous to conclude that the plain meaning of § 1325(b)(4) dictates that ACP imposes a temporal requirement. It is, in fact, the "temporal" approach, and not the monetary one, that is "a gross departure from pre-BAPCPA practice that is not justified by the language or structure of the statute." Schanuth, 342 B.R. at 608. This is because the historical *purpose* of subsection (b) of § 1325 is to determine an amount. That remains the purpose of

13

subsection (b) today, and interpretation of the ACP as a multiplier is completely consistent and congruous with such purpose.

Beyond the "plain meaning" and "gross departure" arguments, some courts have attempted to bolster their findings that the ACP is a temporal requirement by referencing other sections of the Bankruptcy Code which, they say, indicate such a conclusion. First and foremost among these is § 1325(b)(4)(B), which provides that the ACP "may be less than 3 or 5 years, whichever is applicable . . ., but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period." 11 U.S.C. § 1325(b)(4)(B). The argument is that a monetary interpretation of ACP renders this provision meaningless. *See, for example*, <u>Schanuth</u> ("a monetary interpretation of ACP renders § 1325(b)(4)(B) awkward, if not meaningless [in that under] this interpretation of ACP, § 1325(b)(4)(B) doesn't really state anything more than a debtor does not have to pay more than 100 % on his unsecured claims"). <u>Schanuth</u>, 342 B.R. at 607. However, this argument wrongly assumes that the *only* possible purpose of § 1325(b)(4)(B) is to provide for a method by which a plan proposed which is shorter than the ACP may be confirmed over objection. In fact, this would not even be the *best* explanation of § 1325(b)(4)(B).

To begin with, if interpreted in the manner suggested by the "temporal" courts, § 1325(b)(4)(B) is mere surplusage, as in both the pre-BAPCPA and post-BAPCPA Bankruptcy Code appear section § 1325(b)(1)(A), which allows confirmation over the objection of the Trustee or the holder of an allowed unsecured claim if "the value of the property to be distributed under the plan on account of such claim is not less that the amount of such claim". 11 U.S.C. § 1325(b)(1)(A)(2004) and 11 U.S.C. § 1325(b)(1)(A). Interpreted as suggested by the temporal

14

courts, § 1325(b)(4)(B) is merely a restatement of § 1325(b)(1)(A), adding absolutely nothing in

terms of additional "requirements" for confirmation.  Furthermore, § 1325(b)(4)(B) may be

explained in terms of the debtor who owes less in unsecured claims at the time of the filing of the

petition than the required "pay-in" as determined with reference to his "projected disposable

income."  For example, assume an above-median debtor who has CMI in the amount of $100,

and who owes only $4,000.00 in general unsecured claims (no secured or priority claims).  In

such a circumstance, § 1325(b)(4)(B) would appropriately be interpreted as meaning, simply, that

the debtor will not be required to pay $6,000 into the plan, and to remain in the plan for a full 60

months, so that in the off-chance that he incurs additional unsecured priority debt before the

expiration of the ACP, the Trustee will have additional funds available to pay the additional

claim.  Clearly, under 11 U.S.C. § 502(i), a post-Petition tax claim shall be accorded priority

treatment, and shall be allowed or disallowed "the same as if such claim had arisen before the

date of the filing of the petition."  11 U.S.C. § 502(i).  It is certainly not beyond the pale to expect

that a zealous Trustee, or the Internal Revenue Service, might want to hold open the case of a

taxpayer who had pre-Petition difficulties in paying his taxes on time, to ensure post-Petition

liabilities were paid.  The proper interpretation of § 1325(b)(4)(B), as suggested by the

Appellant, would permit such a debtor to receive his chapter 13 discharge as soon as all liabilities

were paid in full, regardless of how long he had been in the plan, whereas the interpretation

suggested by the "temporal" decisions clearly had the opposite effect.  Under the "temporal"

approach, a debtor may be required to stay in the plan well after all liabilities have been paid, and

after all required amounts have been paid into the plan.  Thus, the temporal interpretation

actually renders 11 U.S.C. § 1328(a) meaningless, in that § 1328(a) provides that, "as soon as

15

practicable after completion by the debtor of all payments under the plan, [and assuming the debtor is current on all domestic support obligations], unless the court approves a written waiver of discharge . . . the court shall grant the debtor a discharge of all [dischargeable] debts provided for by the plan or disallowed . . .." 11 U.S.C. § 1328(a). Finally, even the <u>Schanuth</u> court stated, "[a]dmittedly, the ultimate outcome would not be altogether different under a temporal interpretation of ACP . . . by th *syntax* resulting from a temporal reading of § 1325(b)(4)(B) is far more logical." <u>Schanuth</u>, 342 B.R. at 607-608. As to this justification for the finding that ACP is a temporal requirement, the bankruptcy court for the District of Utah said, "[i]n light of what this Court determines to be Congress' manifest intent that the term 'applicable commitment period" is not solely a temporal requirement, the Court is not inclined to hold otherwise to avoid an awkward reading of the Code." <u>In re Fuger</u>, 347 B.R. at 100-101 (Bankr. D.Utah 2006).

Another basis offered by the bankruptcy court in the <u>Musselman</u> case for its finding that ACP is a temporal requirement involves the BAPCPA amendments to 11 U.S.C. §§ 521 and 1329. Specifically, the <u>Musselman</u> court stated:

> Other statutory sections support finding the applicable commitment period as a defined period of time, rather than a multiplier, or nonexistent if projected disposable income is zero or less. First, 11 U.S.C. § 521 requires the debtor to file Schedules I and J, and a statement setting forth any expected increase or decrease in income. Subsection (j) of § 521 requires debtors to continue filing tax returns throughout the pendency of the debtor's case. Second, the ability of unsecured creditors and trustees to monitor cases and propose modifications under § 1329 would be cut short if plans were allowed to terminate early. (Order, pp. 16-17)

Addressing first the § 521(j) concerns, as the court correctly notes, this subsection merely requires that the debtor file all tax returns which come due during the pendency of the case in a timely manner. The penalty for a debtor's failure to do so is not that his plan might be modified,

but rather that his case is subject to dismissal or conversion to chapter 7.  11 U.S.C. § 521(j).

The failure of chapter 13 debtors to file required tax returns was a problem before BAPCPA, and

the addition of this subsection was clearly meant to penalize a debtor who failed to file timely

returns.  There is nothing in this subsection, however, that can remotely be interpreted to require

that chapter 13 plans be of any particular duration.

As to the § 521(a)(1)(B)(ii) requirements (that the debtor file schedules of current income

and expenditures, with statements describing any expected changes), the crux of the <u>Musselman</u>

courts concern in this regard is that "the ability of unsecured creditors and trustees to monitor

cases and propose modifications under § 1329 would be cut short if plans were allowed to

terminate early."  (Order, pp. 16-17).  As an initial matter, it should be stated that the question of

whether or not the projected disposable income requirement of § 1325(b)(1)(B) is applicable to a

modification under § 1329 appears to be unsettled in this district, and other districts are split.

The disagreement stems from the fact that, while § 1329(b)(1) lists a number of sections which

are applicable to a proposed modification of a confirmed chapter 13 plan, among which is §

1325(a), it does not list § 1325(b) as being applicable.  11 U.S.C. § 1329(b)(1).  Notwithstanding,

the first sentence of § 1325(a) begins, "e]xcept as provided in subsection (b) . . .."  11 U.S.C. §

1325(a).  Based on the omission of § 1325(b) from the list of applicable sections in § 1329(b)(1),

some courts have found that the projected disposable income test does not apply to post-

confirmation modifications.  *See* <u>In re Anderson</u>, 153 B.R. 527, 528 (Bankr. M.D.Tenn.  1993);

<u>In re Moss</u>, 91 B.R. 563, 566 (Bankr. C.D.Cal. 1998).  Others have found the introductory

language of § 1325(a) to effectively incorporate § 1325(b) to modifications under § 1329(b)(1).

17

In re Guentert, 206 B.R. 958, 963 (Bankr. W.D.Mo. 1997); In re Jackson, 173 B.R. 168, 171 (Bankr. E.D.Mo. 1994); In re Klus, 173 B.R. 51, 58 (Bankr. D.Conn. 1994). Again, however, it does not appear to that either the District Court for the Eastern District of North Carolina, or the Fourth Circuit Court of Appeals, has definitively ruled on the issue. Nevertheless, clearly, the bankruptcy court in Musselman believes the projected disposable income test does not apply to post-confirmation modifications, as it stated "[p]ursuant to § 1329(b), Section 1325(b) does not apply to proposed modified plans, which may open the door for trustees and unsecured creditors to propose modifications where there may be a substantial and unanticipated change in the debtor's post-confirmation financial condition." (Order, p. 17).

Appellant would argue that it does not matter in the context of the issue presently upon appeal. On the one hand, if § 1325(b) does not apply to § 1329(b)(1) modifications, then *none* of § 1325(b) applies, including § 1325(b)(4). The inapplicability of § 1325(b)(1)(B) would mean that, upon a modification, there would be no minimum payment requirement regarding general unsecured claims, whether the ACP were a temporal requirement or not. There would be no durational requirement regarding the modified plan, except that it could not extend beyond the ACP. 11 U.S.C. § 1329(c). There would be no ACP to use as a multiplier, and there would be no calculation of "projected disposable income." Thus, even though the debtor is required to propose a specific payout as a condition to confirmation, there would be no such requirement with respect to a modification, and plan modification might therefore become an effective vehicle for the very type of "abuse" BAPCPA was meant to prevent. With no incorporation of §

18

1325(b), a debtor could modify their chapter 13 plan only a few months into the case, and still receive a chapter 13 discharge. Under what circumstances, then, would any debtor need convert to chapter 7?

Beyond these practical considerations, another one is evident. As stated above, pursuant to § 1328(a), "as soon as practicable after completion by the debtor of all payments under the plan . . . the court shall grant the debtor a discharge of all [dischargable] debts provided for by the plan or disallowed . . .." 11 U.S.C. § 1328(a). Furthermore, under § 1329, modification of a confirmed plan is only permissible "before the completion of payments under such plan . . .." 11 U.S.C. § 1329(a). It is notable that neither section refers to the expiration of the plan period, or uses any similar language, but rather they refer specifically to "completion of payments." Together, these sections mean that once the debtor has paid in the appropriate *amount*, he is entitled to a discharge, and no one, including the debtor, may modify the plan. Under what statutory authority, then, might the debtor be compelled to remain in the plan after he has paid in all of his projected disposable income?

Of course, in <u>Musselman</u>, the bankruptcy court went much further than to require the Musselman remain in the case after he has paid in all of his disposable income. As a consequence of the bankruptcy court ruling, Musselman will actually be required to pay into his plan, for the benefit of his unsecured creditors, and amount which exceeds his projected disposable income.

The bankruptcy court found that Musselman's proposed plan, with a payment schedule of 55 months, met the projected disposable income requirement of § 1325(b)(1)(B). Specifically, the court stated

19

This court holds that the term "projected disposable income" as used in § 1325(b)(1)(B) and the term "disposable income" as defined in § 1325(b)(2) have the same meaning as to above-median debtors and will determine an amount, not necessarily the only amount, to be paid to unsecured creditors through the chapter 13 plan. In § 1325(b)(1)(B), the new computation of "disposable income" is simply projected out over the time of the applicable commitment period . . ..  (Order, p. 7)

Thus, the bankruptcy court correctly found that, to calculate "projected disposable income" under BAPCPA, one takes the disposable income of the debtor as defined in § 1325(b)(2), and projects, or multiplies the disposable income by the ACP. Because Musselman is an above-median debtor, his disposable income was calculated, in accordance with § 1325(b)(2), by use of his Form 22C. Musselman's Form 22C shows that his disposable income is *negative* $255.80 per month. (Form 22C, p. 6, Line 58). The Trustee's Motion for Confirmation established that Musselman's proposed plan of $459.00 per month for 55 months, which would result in a base plan of $25,245.00, was sufficient to pay all secured, priority unsecured and costs of administration in full, but would pay no dividend to the general unsecured creditors in the case. (Motion to Confirm, p. 2). Yet inexplicably, the bankruptcy court conditioned confirmation of Musselman's plan upon the extension of the plan from 55 to 60 months, at the same rate, resulting in a base plan of $27,540.00. The court so required the extension based upon its erroneous legal conclusion that the plan could not otherwise be confirmed over eCAST's objection, pursuant to § 1325(b). (Order, p. 18). Furthermore, not only was the conclusion erroneous, but it was clearly contrary to the court's own interpretation as to the method of calculating "projected disposable income" as it outline on page 4. (Order, p. 7) If Musselman's disposable income is negative, or zero, it simply does not matter what the ACP is, one can never project the disposable income out over a period of time sufficient to require any

20

distribution to the unsecured creditors under the "projected disposable income" test as defined by the Musselman court itself.

On the other hand, even if the Musselman court erred in its conclusion that § 1325(b) is not applicable to a § 1329 modification, such error would not alter the appropriate interpretation of the ACP as a multiplier.   BAPCPA specifically defined the "income" and "expenses" which debtors are required to use in calculating their "disposable income."  For the purposes of 11 U.S.C. § 1325(b)(2), the "income" from which a debtor's expenses must be deducted to calculate "disposable income," is the debtor's "current monthly income."  *See* 11 U.S.C. § 1325(b)(2). "Current monthly income" or "CMI," is defined in 11 U.S.C. § 101(10A)(A)(i), and in almost all cases will be defined as "the average monthly income from all sources that the debtor receives . . . during the 6-month period ending on . . . the last day of the calendar month immediately preceding the date of the commencement of the case . . .."  11 U.S.C. § 101(10A)(A)(i).  Only if the debtor does not file Schedule I is the court be authorized to determine CMI as of a different date (*see* 11 U.S.C. § 101(10A)(A)(ii)), so fall all practical purposes, CMI will in all cases be set as of the date of the filing of the Petition, and will not change during the course of the case. Thus, whether the debtor's income increases, decreases or remains constant during the pendency of the chapter 13 case, for the purposes of section 1325(b)  it will be *deemed* to remain constant. As a result, any attempt to "recalculate disposable income" in connection with proposed plan modification will be based on the same CMI figure that existed at the inception of the case

Similarly, a debtor's "expenses", for purposes of calculating "disposable income," are also set as of the date of the filing of the Petition, especially for an above-median debtor like Musselman.  Above-median debtors are specifically directed to use those expenses allowed and

detailed in 11 U.S.C. § 707(b)(2)(A). An above-median debtor is are authorized to augment those expenses as provided by 11 U.S.C. § 707(b)(2)(B), but only upon a showing of "special circumstances." *See* 11 U.S.C. § 1325(b)(3). Other than for "special circumstances," the expenses which a debtor is authorized to deduct under § 707(b)(2)(A) are as follow:

(1)     "The . . . monthly expense amounts specified under the National Standards and the Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, *as in effect on the date of the order for relief . . .."* 11 U.S.C. § 707(b)(2)(A)(ii)(I) *(emphasis added)*;

(2)     If applicable, the debtor may include "the *continuation* of actual expenses paid by the debtor that are reasonable and necessary for the care and support of an elderly, chronically ill or disabled household member or member of the debtor's immediate family . . .." 11 U.S.C. § 707(b)(2)(A)(ii)(II) *(emphasis added)*;

(3)     The actual costs of administering the chapter 13 plan, limited to ten percent of the amount of such payments. 11 U.S.C. § 707(b)(2)(A)(ii)(III);

(4)     If applicable, the debtor may include "the actual expenses for each dependent child less than 18 years of age, not to exceed $1,500 per year per child, to attend a private or public elementary or secondary school . . ." If claimed, the debtor must provide documentation and a detailed explanation as to why such expenses are reasonable and necessary, and why they have not already been accounted for in the other expenses claimed by the debtor. 11 U.S.C. § 707(b)(2)(A)(ii)(IV);

(5)     If applicable, the debtor may include additional costs of housing and utilities, in excess of those listed under 11 U.S.C. § 707(b)(2)(A)(ii)(I), provided the debtor can supply documentation and can demonstrate that the additional costs are reasonable and necessary. 11 U.S.C. § 707(b)(2)(A)(ii)(V);

(6)     The average of the debtor's monthly payments on secured debts, calculated as the sum of "the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months *following the date of the petition*[,]" including past due payments on secured debts, "divided by 60." 11 U.S.C. § 707(b)(2)(A)(iii) *(emphasis added)*; and

(7)     The debtor's expenses for payment of all priority claims. 11 U.S.C. § 707(b)(2)(A)(iv).

22

Thus, the plain meaning of these sections clearly indicates that, at least for above-median-income debtors, the debtor's minimally allowed "expenses" are, for the most part, fixed as of the date of the filing of the petition. Those expenses identified in paragraphs (1) and (6), above, specifically reference the "date of the order for relief" and the "date of the petition," respectively; those in paragraph (2) will only be allowed if claimed initially, but cannot be "added" later; those in paragraph (3) may change, based on whether or not the plan payment changes, but will likely have only a negligible effect, if any, on the calculation of "disposable income"; those identified in paragraph (4) remain subject to the court's scrutiny, and will likely not affect the majority of filings; given the state of energy in the United States, those identified in paragraph (5) are likely only to increase during the pendency of the case; and those in paragraph (7) will be set as of the filing date, but will remain subject to increase during the pendency of the case. Of course, to the extent the court may be inclined to allow a recalculation of "disposable income" subsequent to confirmation, any allowed increase in expense will only reduce the amount of the "disposable income." Furthermore, to the extent that the debtor's initial expenses used to calculate "disposable income" do not include expenses of the type listed in paragraphs (2), (4) and/or (5), above, the initial calculation of expenses will set a minimum expense level which will remain effective throughout the chapter 13 case, making the calculation of "disposable income" based on a lower level of expense impossible.

Altogether, then because the debtor's CMI will not change during the course of the case, and further because his expenses will either not change or will in crease, neither the debtor's disposable income nor his projected disposable income will change during the time that his case is pending. Accordingly, if § 1325(b) applies to a modification under § 1329, there still would be

23

no basis to require the debtor to pay more into his plan for his unsecured creditors than originally indicated by the "projected disposable income" test.

Lastly, despite assertions that the "plain meaning of the statute" dictates that ACP is to be interpreted as a temporal requirement, the fact that several courts have found the ACP to be a multiplier belies such a claim. Among the reported cases holding that ACP is merely a monetary measure are In re Fuger, 347 B.R. 94 (Bankr. D.Utah 2006); In re Brady, 361 B.R. 765 (Bankr. D.N.J. 2007); and In re Swann, 368 B.R. 12 (Bankr. N.D.Cal. 2007).

**B.      Even if the ACP generally connotes a temporal requirement, it is simply not applicable in cases where there is no disposable income.**

As the bankruptcy court found, Musselman has no disposable income according to the calculations required by the statute. (Order, p. 18). The wording of § 1325(b)(4) makes it perfectly clear that the ACP is a concept which is relevant only in the context of subsection (b) of § 1325. 11 U.S.C. § 1325(b)(4). It is, therefore, relevant only in connection with the calculation of the debtor's projected disposable income, which is, even according to the Musselman court, a function of the debtor's disposable income. (Order, p. 7). As another Bankruptcy Judge in the Eastern District of North Carolina has observed, "[b]ecause applicable commitment period is a term the statute makes relevant only with regard to the required payment of projected disposable income to unsecured creditors and not to any other plan payments or requirements, it simply does not come into play where no disposable income must be taken into account." Alexander, 344 B.R. at 751. Put another way, "the applicable commitment period is 'fundamentally irrelevant' in the context of above-median debtors with negative monthly disposable income on line 58 of Form B22C." In re Lawson, 361 B.R. 215, 220 (Bankr. D.Utah 2007), *citing* In re Zirtzman,

24

2006 WL 3000103 (Bankr. N.D.Iowa 2006). *See also* <u>In re Frederickson</u>, 368 B.R. 2007, 832 (Bankr. E.D.Ark. 2007)("the debtor is not required to make payments to his unsecured creditors under the plan [and because] of this, the Court finds that the applicable commitment period does not apply in the debtor's case").

## VI. CONCLUSION

In Musselman, the bankruptcy court correctly concluded that Musselman had properly computed his disposable income in accordance with 11 U.S.C. § 1325(b); it correctly described the method for computing a chapter 13 debtor's projected disposable income, by taking the disposable income and projecting over the ACP; and it correctly concluded that Musselman has negative disposable income as calculated under the relevant Bankruptcy Code sections. Since Musselman has negative disposable income, he has no projected disposable income, and there is no amount he need propose to pay to his unsecured creditors through his plan in order to "pass" the projected disposable income test of § 1325(b)(1)(B). By reading the ACP as a temporal requirement, rather than as a multiplier, the bankruptcy court misconstrued the purpose of the ACP under § 1325(b), and as a result it came to the erroneous legal conclusion that a debtor like Musselman, with negative or no projected disposable income, may nevertheless be required to pay a dividend to his unsecured creditors as a condition of "passing" the projected disposable income test. Accordingly, the decision of the bankruptcy court as interpreting the ACP as a temporal requirement, at least in the case of a debtor with negative or no projected disposable income, should be reversed.

This the 25th day of January, 2008.

**Law Offices of John T. Orcutt, P.C. by**

s./ Joseph A. Bledsoe, III

Joseph A. Bledsoe, III
Attorney for Appellant
6616-203 Six Forks Road
Raleigh, NC 27615
Telephone: (919) 847-9750
Facsimile: (919) 847-3439
NC State Bar No.: 19817

26

## CERTIFICATE OF SERVICE

I, Joseph A. Bledsoe, III, of the Law Offices of John T. Orcutt, P.C., do hereby certify under penalty of perjury that I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age; and that on this day, I served copies of the foregoing Brief of Appellant, by regular U.S. mail, first-class postage pre-paid, upon the parties set forth below (including addresses):

B. Perry Morrison, Esquire
Attorney for Appellee
P. O. Box 2046
Wilson, NC 27894-2046

Trawick H. Stubbs, Jr.
Chapter 13 Trustee
P. O. Box 1618
New Bern, NC 28563-1618

It is under penalty of perjury that I certify the foregoing to be true and correct.

DATE: January 25, 2008

        s./ Joseph A. Bledsoe, III
        Joseph A. Bledsoe, III
        Attorney for Appellant
        6616-203 Six Forks Road
        Raleigh, NC 27615
        Telephone: (919) 847-9750
        Facsimile: (919) 847-3439
        NC State Bar No.: 19817